UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
WILLIAM WRIGHT,                                            :
                                                           :   **MEMORANDUM**
                                        Petitioner,        :   **DECISION AND ORDER**
                                                           :
                - against -                                :   12 Civ. 6140 (BMC)
                                                           :
                                                           :
WILLIAM LEE, Superintendent, Green Haven                   :
Correctional Facility,                                     :
                                                           :
                                        Respondent.        :
---------------------------------------------------------- X

**COGAN**, District Judge.

The petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleges six points of error, but they fall into two categories: (1) prosecutorial misconduct with regard to a comment the prosecutor made during closing argument; and (2) alleged errors in the jury instructions.[1] The Appellate Division held that all of these claims were unpreserved because no objection had been made at trial, and that the failure to preserve did not constitute ineffective assistance of counsel. It held in the alternative that, in any event, petitioner's arguments were without merit. See People v. Wright, 90 A.D.3d 679, 933 N.Y.S.2d 887 (2d Dep't 2011), leave to app. denied, 18 N.Y.3d 963, 944 N.Y.S.2d 492 (2012) (table). I hold that petitioner's claims are procedurally barred and that petitioner's assertion of ineffective assistance of counsel does not constitute cause to address the merits of his claims notwithstanding the procedural bar. Accordingly, the petition is denied.

---

[1] Petitioner's points of error are worded somewhat differently than the points he raised in the Appellate Division, although there are the same number of points, they appear substantially the same, they were all exhausted in the New York courts, and petitioner refers to them as "[t]he New York Court errors." For these reasons, I am assuming that petitioner is seeking to raise here the same points he raised in the Appellate Division and the New York Court of Appeals. To the extent petitioner is attempting to raise any claims not previously raised in the state courts, they are deemed exhausted but procedurally barred. See Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009).

## BACKGROUND

The facts of the case can be simply stated. In the course of a mundane domestic dispute, petitioner stabbed one Tyrelle Gorham, the younger brother of his girlfriend, injuring him, with a knife he picked up in the kitchen. A short time later, when the girlfriend's older brother, Demetrius Lee, arrived at the premises, petitioner stabbed him as well with a different knife that petitioner was carrying in his pocket, killing him. Petitioner then fled to Atlanta using a false name and was apprehended there by the police.

Petitioner contended at trial that each of the brothers had separately attacked him and that he was therefore defending himself. The jury rejected the defense of justification and, although acquitting petitioner of murder in the second degree, convicted him of manslaughter in the first degree, assault in the second degree, and criminal possession of a weapon in the fourth degree. The court sentenced petitioner to consecutive terms of 25 years for the manslaughter charge and five years for the assault charge, plus one year concurrently for the weapons charge.

Additional facts will be set forth below as they relate to each of petitioner's points of error.

## DISCUSSION

### I. Standard of Review

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the

state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct at 2554; Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)).  If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.  See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011).  Here, because petitioner's trial counsel failed to object to any of the points that petitioner later raised on appeal, the Appellate Division properly invoked a state procedural bar.  Wright, 90 A.D.3d at 679-80, 933 N.Y.S.2d 887.

Since the Appellate Division properly relied on a procedural bar, the issue becomes whether any ground exists for reaching the merits notwithstanding that procedural bar. Procedural default on state law grounds may be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  Harris, 489 U.S.

3

at 262, 109 S. Ct. at 1043 (internal citation omitted).  Ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray v. Carrier, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 2645-46 (1986), if, as here, it has been exhausted in the state court.  See Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591-92 (2000).

To determine ineffective assistance of counsel, courts must apply the familiar test under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  To satisfy the first prong of Strickland's two-part test, the performance prong, petitioner must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064.  The record must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065.  Nonetheless, this presumption may be overcome with evidence that counsel's conduct lacked a legitimate strategic basis.  "Omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," may fall below the constitutional minimum standard of effectiveness.  Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

To satisfy the second prong, the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, __ U.S. __ , 131 S. Ct. 1388, 1403 (2011) (citing Harrington v. Richter, __ U.S. __ , 131 S. Ct. 770,

4

792 (2011)). Moreover, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so *undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Cullen, __ U.S. __ , 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 686, 104 S. Ct. at 2064) (emphasis and alternation in Cullen).

In determining whether the Appellate Division properly denied petitioner's claim of ineffective assistance of counsel, I am bound by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal

5

justice systems,' not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, __ U.S. __ , 133 S. Ct. 696, 708 (2013) (quoting Harrington, 131 S. Ct. at 786). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, __ U.S. __ , 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, __ , 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, __ U.S. __ , 132 S. Ct. 2148 (2012).[2]

Finally, the Court recognizes that because "[t]he standards created by Strickland and § 2254(d) are both highly deferential," "when the two apply in tandem, review is doubly so." Harrington, 131 S. Ct. 770 at 788 (internal citations and quotation marks omitted). As explained below, applying this deferential standard of review, petitioner has not established that his trial counsel was constitutionally ineffective for failing to object to purported prosecutorial

---

[2] Harrington and Cavazos v. Smith, __ U.S. __ , 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," 131 S. Ct. 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20, 21-22 (2d Cir. 2011) (reversing its earlier decision granting habeas relief upon consideration of Cavazos).

6

misconduct and trial court errors and, consequently, petitioner cannot overcome the procedural bar to his claims.

## II. Prosecutorial Misconduct

Petitioner testified at trial. In support of his justification defense, he gave vague testimony to the effect that he had heard that Demetrius Lee was a member of the Bloods street gang and had a reputation for violence. During his summation, the prosecutor noted that the accusation of Lee's Bloods membership came only from petitioner, and that the officers from the precinct where Lee lived – who had testified at trial – had not testified that Lee was a member of the Bloods. Petitioner's attorney did not object to this comment, but, on appeal, petitioner contended that this comment deprived petitioner of due process because it implied that the failure of the police to testify, one way or the other, as to Lee's alleged Bloods membership meant that petitioner was fabricating Lee's Bloods membership. Petitioner further summarily contended on appeal that the Appellate Division should hear the unpreserved point because his trial counsel was ineffective in not preserving it.

I cannot find that the Appellate Division's rejection of petitioner's ineffective assistance claim as to this point was contrary to or an unreasonable application of Strickland. As to objective reasonableness, there was certainly nothing palpably improper about the prosecutor's argument that only petitioner had testified as to Lee's alleged Bloods membership. The prosecutor did not come close to misstating the record by affirmatively representing that the police witnesses had testified contrary to petitioner, nor did he characterize petitioner as a liar. Cf. People v. Ortiz, 33 A.D.3d 432, 433, 922 N.Y.S.2d 518 (1st Dep't 2006) (concluding that "[d]efendant was deprived of a fair trial by the cumulative effect of the prosecution's conduct" including the prosecutor's repeated characterization of defendant as a liar). The implication of

7

the prosecutor's comments was, at worst, that if Lee was a Bloods member, it is likely that one of the three officers from the precinct where he lived would have been asked about it on cross-examination. Indeed, the Appellate Division concluded that even if petitioner's challenge to the prosecutor's comments in summation had been preserved for appellate review, "the challenged remarks were fair comment on the evidence, permissible rhetorical comment, or responsive to defense counsel's summation." Wright, 90 A.D.3d at 679, 933 N.Y.S.2d 887. This Court agrees.

Additionally, even if the prosecutor's fleeting attempt to have the jury evaluate petitioner's credibility on this point by comparing it to the police witnesses' silence might have been close to technical impropriety, petitioner's trial counsel could have readily recognized the high risk that an objection would be overruled, and that if it were, the importance of the issue would have been emphasized to the jury, rather than minimized. Declining to object may have been a particularly sound strategy given that petitioner's testimony that he had heard Lee was a Bloods member was entirely conclusory and offered no specifics.

Moreover, petitioner did not come close to meeting the standard for showing prejudice under Strickland. Petitioner's girlfriend testified that she saw petitioner swing a knife at Lee almost immediately upon opening the door and that, after the attack, petitioner called her and said, "I told you I'm not going down without a fight." Lee's other sister, who was on the phone with Lee when he arrived at the apartment, also testified that she heard Lee knocking on the door and calling for petitioner prior to hearing the door opening, Lee making a surprised exclamation immediately after the door opened, and the phone then going dead. The medical and forensic evidence also suggested an ambush attack rather than a struggle. Lastly, following the attack on Lee, petitioner fled to Atlanta and used a false name. Thus, there was overwhelming evidence

8

from which the jury could have concluded that petitioner was the initial aggressor and there is no "substantial" likelihood that if petitioner's trial counsel had objected to the prosecutor's summation, the result of the trial would have been any different. See Cullen, 131 S. Ct. at 1403. See also Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("where there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus."). The Appellate Division did not unreasonably apply Strickland in concluding that petitioner's attorney's failure to object to this brief portion of the prosecutor's summation did not deprive petitioner of a fair trial and, consequently, petitioner "was not deprived of the effective assistance of counsel." Wright, 90 A.D.3d at 680, 933 N.Y.S.2d 887.

**II. Jury Instruction Errors**

    A. <u>Failure to Request Additional Instruction on Lee's Violent Character</u>

At the outset, I note that this is not a case where defense counsel failed to request, or the trial court failed to give, an instruction on the justification defense. Without any objection from the prosecutor, the court gave the standard pattern instruction on justification. At the charge conference prior to instructing the jury, the court showed the prosecutor and defense counsel the charge it planned on giving and defense counsel found the justification charge to be sufficient. After the charge was given, the court asked the parties if anything was left out of the charge, and petitioner's counsel did not object. Petitioner did not contend that there was anything wrong with the instruction that was given. Rather, since petitioner could not contend that there was a failure to request or give a justification instruction, his argument to the Appellate Division was that his trial counsel was ineffective for not requesting an additional, more case-specific justification instruction.

The New York pattern jury instructions provide an additional instruction to its recommended jury instruction on justification when there is evidence that the victim had a violent history. The additional instruction essentially states that, in determining whether there was justification, the jury may consider whether the defendant believed that the victim had a reputation for violence. On appeal, petitioner contended that trial counsel was ineffective for not requesting this additional instruction.

In determining that petitioner's trial counsel was not ineffective for failing to request this additional instruction, the Appellate Division did not unreasonably apply Strickland. An objectively reasonable defense lawyer might choose not to request this additional instruction for strategic reasons; namely, there were points in the additional instruction that could have hurt petitioner. The preface to the instruction that the victim's violent reputation could be considered states that "Normally, the law does not permit such testimony [about the victim's reputation]. The reason is that every person, regardless of that person's relative worth to the community, has the right to live undisturbed by an unlawful assault. The character of [name the victim] is thus not in issue." In addition, the instruction states that "A person cannot be considered the initial aggressor simply because [he] has a reputation for violence or has previously engaged in violent acts." This portion of the instruction would have reinforced to the jury that even if Lee had a violent reputation, that did not mean he was entitled to any less protection under the law than anyone else. And, especially in light of the fact that petitioner had attacked two people with knives in separate incidents and, in each attack he was the only one with a knife, focusing the jury on these issues may have been to petitioner's strategic disadvantage. Therefore, the Appellate Division could have reasonably applied Strickland to conclude that petitioner's

counsel's decision not to put these points in front of the jury fell "within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S. Ct. at 2065.

Further, petitioner's trial counsel could well have recognized that, under the court's given charge, petitioner received the essential benefits of the supplemental "violent reputation" charge without its negative aspects. The standard justification instruction that the trial court gave expressly advised the jury that justification had to be evaluated on the basis of what a person in petitioner's position would have believed concerning the need to use deadly force, and that the prosecution had the burden to proof lack of justification beyond a reasonable doubt. In addition, the instruction advised the jury that even if petitioner was wrong about the need for deadly force, if his belief was reasonable, then the prosecution would not have met its burden of proving lack of justification.

This reference to petitioner's belief as the standard for determining justification created an opportunity for defense counsel to make arguments about Lee's alleged violent reputation in his closing argument and defense counsel seized that opportunity emphatically. Given the emphasis that petitioner's trial counsel's summation placed on petitioner's purportedly reasonable belief in the need to use deadly force to protect himself from Lee, the Appellate Division could have reasonably applied the Strickland test and found an absence of prejudice from defense counsel's failure to request the supplemental instruction. Everything petitioner now contends should have been in the supplemental instruction was argued vigorously in his counsel's closing argument, and that argument fit well against the backdrop of the standard instruction that the court gave.

Finally, the absence of prejudice is further demonstrated by the strong possibility that, even if asked, the trial court would not have given the supplemental instruction. There is no

obligation on the part of a court to give an instruction that incorporates the particular facts raised in defense, and there can be no error in giving the standard instruction on justification where it is fully applicable to a defendant's case. See People v. Campbell, 68 A.D.3d 890, 891, 890 N.Y.S.2d 606, (2d Dep't 2009) ("[t]he court need not marshal the evidence except to the extent necessary to explain the application of the law to the facts of the case, and is not required to explain all the contentions of the parties"). And if petitioner had been entitled to request an instruction that specifically referred to Lee's alleged violent history, the prosecution might well have sought to balance the instruction by asking to include in the charge, as the evidence indicated, that Lee was stabbed in the back and unarmed – facts that were hardly consistent with petitioner's justification defense. This also shows the reasonableness of trial counsel's decision to rely on the standard instruction rather than opening a potential Pandora's Box.

  B. <u>The Assault Instruction</u>

    The trial judge either misspoke or the court reporter mistranscribed what the trial judge said when he gave the assault instruction as to the surviving victim Gorham. The instruction the court gave should have listed one of the elements that the prosecution was required to prove as: "that defendant was not justified," <u>i.e.</u>, that the assault occurred without justification. Instead, the transcript reads, "that defendant was not injured." In the Appellate Division, petitioner, assuming a misreading by the court, argued in his *pro se* brief that trial counsel's failure to object rendered him constitutionally ineffective. The District Attorney, in turn, argued that the claim was unpreserved as no objection had been raised at trial. He argued alternatively that either the court reporter mistakenly substituted the word "injured" for "justified," or, if the trial judge misspoke, the error was harmless because, in context of the entire charge, it did not undermine the justification defense. The Appellate Division did not specifically state why it was rejecting

petitioner's claim, other than that it was unpreserved and without merit. Wright, 90 A.D.3d at 680, 933 N.Y.S.2d 887.

If this was a court reporter's error, then no Strickland issue existed in the Appellate Division because the charge was given correctly. If the transcript accurately reflects a misreading by the trial judge, then the Appellate Division could have reasonably concluded that the petitioner was not prejudiced by his counsel's failure to object and, thus, it did not unreasonably apply Strickland. The trial court expressly instructed the jury that the prosecution had to disprove justification in order to convict petitioner in the context of both the assault count and the homicide count. Specifically, the trial court referred to both Lee and Gorham throughout the justification charge, even though the assault count only involved the latter. There was simply no way that the jury could have returned a conviction on the assault count without considering and rejecting petitioner's justification defense, and thus there was no prejudice from petitioner's trial counsel's failure to object to any misreading, if a misreading even occurred. See United States v. Brooks, 125 F.3d 484, 496 (7th Cir. 1997) (concluding that defendant failed to establish ineffective assistant of counsel where defendant "fail[ed] to show that this minor misreading of the jury instruction, to which no objection was raised, prejudiced the outcome of the proceedings.").

    C.  <u>Failure to Instruct on Justification Separately as to the Manslaughter Charge</u>

The very beginning of the justification charge as delivered by the trial court instructed the jury, by separate reference as to each count of the indictment, that petitioner was asserting justification as to the charges of second degree murder, first degree manslaughter, second degree manslaughter, and second-degree assault. It further explained that "It is thus an element of each of these counts that the defendant was not justified. As a result, if you find that the People have

failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty of these counts."

Nevertheless, on appeal to the Appellate Division, petitioner contended in his *pro se* brief that the trial court erred – and his counsel was ineffective in not objecting to the error – by not further instructing the jury that if it acquitted petitioner on the murder charge (which it did), and if it did so on the ground of justification (which there is no reason to presume, as there were a variety of scenarios having nothing to do with justification by which petitioner could have been convicted of manslaughter and acquitted of murder), then it should acquit him of manslaughter as well. The District Attorney again argued that the claim was unpreserved as no objection had been raised at trial and the Appellate Division accepted this argument.

As to the ineffective assistance of counsel claim, the Appellate Division did not unreasonably apply Strickland in concluding that defense counsel was not ineffective in failing to raise this issue. Objectively reasonable counsel does not have to request the same instruction multiple times. The trial court clearly let the jury know that justification applied to all of the violence-related counts – i.e., the counts other than the weapons count. Similarly, it follows that petitioner was not prejudiced by his counsel's failure to raise this issue because the jury had already received the instruction that petitioner argued on appeal should have been given again.[3]

### D. Failure to Include the Attack on Gorham in the Weapons Possession Charge

Finally, in his *pro se* brief on appeal, petitioner contended that the trial court erred – and his counsel was ineffective for not objecting to the error – by not including the attack on Gorham in the instruction on the weapons charge. Petitioner's argument is imprecise and takes some

---

[3] Petitioner also argued in his *pro se* submission to the Appellate Division that this "stop consideration" charge should have been given with regard to all counts, including the count for assaulting Gorham. This argument is baseless. Even if the jury concluded that petitioner's use of violence against Lee was justified as an act of self-defense, that conclusion does not imply that petitioner's use of violence during his separate and earlier encounter with Gorham was justified.

14

interpretation. The most reasonable one is that petitioner was satisfied with the instruction on weapons possession as it applied to Lee, and he views that instruction as having included a justification defense because it required the prosecution to prove that his possession of the knife that he used to kill Lee had to have been "unlawful" at the time he used it. The charge stated that the prosecution had to prove that petitioner possessed the knife "with intent to use the knife unlawfully against another, and this refers to the knife used against Demetrius Lee." Petitioner appears to contend that the kitchen knife used on Gorham should also have been included in this instruction so that the jury could have taken Gorham's purported status as the initial aggressor into account during its deliberations on the weapons possession count.

It is important to note, however, as petitioner may not have realized, that he was not charged with illegal weapons possession with respect to the attack on Gorham. Since there was no weapons charge with respect to Gorham, there was no basis for including a reference to Gorham in that charge.[4] Thus the trial court therefore did not err, trial counsel was not ineffective, and the Appellate Division did not unreasonably apply Strickland in rejecting petitioner's claim.

## CONCLUSION

The petition for a writ of habeas corpus is denied and the case is dismissed. Because the petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and

---

[4] In any event, justification is not a defense to a charge of weapons possession and, consequently, petitioner could not have requested a justification instruction in the context of the weapons possession count. See People v. Jenkins, 81 A.D.3d 662, 663, 918 N.Y.S.2d 114 (2d Dep't 2011) ("the justification defense does not apply to the charge of criminal possession of a weapon in the second degree").

15

therefore *in forma pauperis* status is denied for the purpose of an appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921 (1962).

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       April 17, 2013